**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| **v.** | **Case No. 1:20-cr-194-RCL** |
| **NABIL MADZARAC**, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

Sometimes, the government acts badly.  Occasionally, it does so in bad faith.  Usually, it does so without any suggestion of unfair motive.  Here, the government made good faith choices taken beyond procedural limits.  It acted badly, but not wrongfully.  Nevertheless, those actions require action by this Court.

In 2020, the government indicted the defendant after being warned by his counsel that there would be no venue in the District of Columbia.  It continued to pursue the case even after repeated reminders by the defense that venue was inappropriate.   And then—immediately after the defendant filed the motion to dismiss for lack of venue long threatened—the government promptly asked this Court for leave to dismiss the indictment without prejudice to refiling.  In response, the defense requested that this Court exercise its discretion to dismiss the case *with* prejudice and prevent the government from filing the same case against Nabil Madzarac again.

Given the peculiar circumstances here, the Court will exercise its procedural authority to dismiss this case while preventing the government from refiling on the same charges.  To be clear, there is no evidence that any prosecutor acted purposefully to harm Mr. Madzarac.  But because dismissal without prejudice would objectively harass this defendant such that it would not be in the public interest to dismiss without prejudice, the Court will **DISMISS WITH PREJUDICE**.

## I.    BACKGROUND

On or about August 15, 2020, Mr. Madzarac allegedly issued threats to kill or attempt to kill foreign officials associated with the Embassy of the State of Libya.  Mr. Madzarac was subsequently arrested and charged by complaint with one count of Interstate Communication with Intent to Threaten or Injure, in violation of 18 U.S.C. § 875(c), and one count of Threats Against Foreign Officials, Official Guests, or Internationally Protected Persons, in violation of 18 U.S.C. § 878(a).  Compl., ECF No. 1.  Mr. Madzarac made his initial appearance on August 18, 2020, Minute Entry (Aug. 18, 2020), and was indicted one month later.  Indictment, ECF No. 13.

Even before Mr. Madzarac was indicted, the government was informed that the defense believed venue in the District of Columbia was improper.  At a preliminary hearing on September 1, 2020, the defense unequivocally raised the issue, explaining that no conduct occurred in the District of Columbia, and no communication was transmitted or otherwise touched the District.  *See* Tr. (Sep. 1, 2020) at 45, ECF No. 35.  The government brushed off the concerns, represented that venue was appropriate, and pursued an indictment.  *Id.* at 46.  On September 17, 2020, a grand jury in the District of Columbia indicted Mr. Madzarac on the same charges as were in the complaint.  *See* Indictment.

The case proceeded along, with this Court setting a trial date for May 2023.  Minute Entry (July 29, 2022).  In August 2022, after receiving certain grand jury material, Mr. Madzarac's attorney raised the issue of venue with the government again.  Sealed Decl. of Benjamin Singer ¶ 3, ECF No. 97-4.  Defense counsel then requested additional information to ascertain how the government presented the case to the grand jury and why the government pursued the case in this District (as opposed to one where venue would have been proper).  *Id.*  Later that same month, the defense raised the venue issue again via letter to the prosecutor.  *Id.* ¶ 4.

The government, whether in response to defense counsel's repeated objections or otherwise, offered an extraordinarily favorable deferred prosecution agreement in September 2022.  ECF No. 97-5.  He was offered the chance to serve exactly zero days of incarceration through that agreement.  *Id.*  In exchange, Mr. Madzarac would have had to agree to many provisions, including a clause that he would waive objections to venue.  *Id.*  Mr. Madzarac's attorney avers that the government maintained the venue provision as nonnegotiable.  Sealed Decl. of Benjamin Singer ¶ 5.  The defendant subsequently rejected the resolution.  Def.'s Reply Supp. Mot. Dismiss With Prejudice 5, ECF No. 97-1.

Between September 2022 and February 2023, the parties appeared before the Court to discuss various matters, including whether Mr. Madzarac would receive new counsel or proceed *pro se* at trial.  *See* Minute Entry (Nov. 3, 2022); Minute Entry (Feb. 10, 2023); Order, ECF No. 86.  During this same period, the government never suggested that the case might ultimately fail due to a venue defect.  Indeed, it took affirmative steps to move the case along.  *See, e.g.*, Notice of Filing of State Department Documents, ECF No. 85; Tr. (Nov. 3, 2022) (motions hearing during which the government attorney described the case in detail, represented that the government had substantially completed discovery, asked for speedy trial to be waived, and suggested there might still be a resolution to the matter), ECF No. 92; Tr. (Feb. 10, 2023) 17:16–22 (status conference during which the government attorney represented readiness for trial and suggested that the date could have been held earlier but for the defense's wish to file several motions), ECF No. 90.

In mid-February 2023, with the representation issues resolved, defense counsel moved to dismiss on several grounds, including for lack of venue.  Def.'s Mot. Dismiss, ECF No. 88.  Two weeks later, the government itself requested that this Court dismiss the case.  Gov.'s Mot. Dismiss, ECF No. 91.  In so doing, the United States is unequivocal.  It "concedes" that "this is the wrong

venue to adjudicate the offenses" "and, consequently, the government now moves to dismiss the case." *Id.* at 1.  However, the government wants this Court to do so without prejudice instead of with prejudice.  *Id.*  The former allows the government to bring these charges against Mr. Madzarac again.  The latter precludes that option.

The defense challenged the government's request for a dismissal without prejudice, Def.'s Reply Supp. Mot. Dismiss With Prejudice, and the government responded to that opposition, Gov.'s Reply, ECF No. 98.  The defendant has also asked for additional discovery, particularly for grand jury material, that might help support allegations of government misconduct.  Def.'s Reply Supp. Mot. Dismiss With Prejudice 11.  Because the defendant has demonstrated that dismissal with prejudice is proper without such discovery, the Court need not reach the issue.

## II.    LEGAL STANDARD

"Historically, the prosecutor had unrestricted authority to enter a nolle prosequi at any time before the empaneling of the jury and such a dismissal was unencumbered by any restriction on a renewal of the charges."  *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989) (internal citations omitted).  However, the Federal Rules of Criminal Procedure now require the government to seek "leave of court" if it wishes to dismiss an indictment.  Fed. R. Crim. P. 48(a).  "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."  *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam).  On the other hand, a court cannot fail to grant leave simply because it disagrees with the prosecutor's substantive choices as to what merits prosecution.  *See United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016).

The process involves a two-part inquiry.  First, "[w]hen the prosecutor's discretion is challenged, the prosecutor has the initial burden of explaining that a dismissal without prejudice

would be in the public interest." *United States v. Florian*, 765 F. Supp. 2d 32, 35 (D.D.C. 2011). This is an exceedingly low threshold. *See id.* After meeting the public interest threshold, the government's choice is presumptively in the public interest and therefore a dismissal without prejudice is "presumptively valid." *Id.* To overcome that presumption, the court will then consider part two of the inquiry: whether "dismissal without prejudice 'would result in harassment of the defendant or would otherwise be contrary to the manifest public interest.'" *United States v. Simmons*, No. 18-cr-344 (EGS), 2022 WL 1302888, at *19 (D.D.C. May 2, 2022) (quoting *Poindexter*, 719 F. Supp. at 10). This "has the effect of granting authority to the court in exceptional cases to reject a dismissal without prejudice." *Poindexter*, 719 F. Supp. at 10. A court can determine whether the potential for harassment renders a dismissal with prejudice in the public interest by looking at the purpose of the government's dismissal and the effect it has on the defendant.

In sum, "the question is not whether the government was acting in bad faith, but rather whether the actions of the government objectively amounted to harassment." *United States v. Pitts*, 331 F.R.D. 199, 203 (D.D.C. 2019). "The ultimate decision regarding a dismissal with prejudice depends upon the 'purpose sought to be achieved by the government and its effect on the accused.'" *Id.* at 205 (quoting *Poindexter*, 719 F. Supp. at 10). At its core, Rule 48(a) ensures that "the government [cannot] validly use Rule 48(a) to gain a position of advantage, or to escape from a position of less advantage in which it found itself as a result of its own election." *Poindexter*, 719 F. Supp. at 11.

### III.    DISCUSSION

**A.  The Government Has Demonstrated That Dismissal Without Prejudice Would Be in the Public Interest**

To start, the government has met its initial, rather *de minimis*, burden to explain why dismissal without prejudice would serve the public interest in the abstract.  Specifically, the government argues that another prosecutor may choose to hold the defendant accountable for the charged conduct, in another venue.  Gov.'s Reply 1.  It concedes nothing except that dismissal for lack of venue should occur in the District of Columbia.  *Id.*  The government explains that it continues to believe that the defendant's conduct is serious and could be worthy of prosecution. *See id.*  And even the defendant agrees that venue is plainly available in other districts.  *See* Def.'s Mot. Dismiss 8.

The government's explanation is enough to meet the low initial bar of public interest. Dismissing in one venue to allow charges to be brought in another venue is well within the bounds of permissible "judgment for that of the prosecutor."  *See Poindexter*, 719 F. Supp. at 10.  There are no obvious procedural bars stopping such a future prosecution.  With that, the burden shifts to the defendant to explain why the Court should take the extraordinary step of precluding the government from coming to another court with another indictment on the same charges.

**B.  The Defendant has Shown Dismissal with Prejudice is Appropriate**

**a.  Origins of the Harassment Test**

To succeed in having this case dismissed with prejudice, Mr. Madzarac must establish why allowing an additional prosecution would result in objective harassment and therefore be contrary to the manifest public interest.  *See Florian*, 765 F. Supp. 2d at 35.  The exact basis of this test, and the Court's power to actually bar further prosecution on harassment grounds, is somewhat murky.  As the Court earlier noted, historically, the power of a federal court to interfere with the

choice to dismiss a federal criminal prosecution was nil.  *United States v. Salinas*, 693 F.2d 348, 350 (5th Cir. 1982).  That is, at common law, the prosecutor could dismiss the case "without the consent of the court at any time before the empaneling of the jury."  *Id.*  This historical restraint on the judiciary was abridged when Rule 48(a) went into effect in the mid-1940s as part of the initial version of the Federal Rules of Criminal Procedure.  *United States v. Cowan*, 524 F.2d 504, 505 & n.1 (5th Cir. 1975).

The relevant portion of Rule 48(a) then, as now, requires "leave of court" for dismissal. This language was chosen by the Supreme Court when it was drafting the rules.  Indeed, the Supreme Court expressly rejected an alternative proposal by the Advisory Committee appointed to draft the Rules which would have required that the prosecution merely provide a statement of the reasons for dismissal.  *See* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online 28, 34–37 (2020).  "The Court offered little public explanation for its final revisions, at least at the time."  *Id.* at 37; *accord Rinaldi*, 434 U.S. at 29 n.15 (recognizing that the leave of court requirement was added by the Court "without explanation").

Around 30 years after Rule 48(a) came into effect, the Supreme Court provided color and substance to the otherwise bare language.  Surveying decisions of the circuit courts, the Court concluded that "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e. g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."  *Rinaldi*, 434 U.S. at 29 n.15 (citations omitted).[1]  Only a few years earlier, the D.C. Circuit had similarly recognized

---

[1] The Supreme Court also recognized there may be circumstances where a dismissal consented to by both the government *and* the defendant would fail to garner leave of court.  *Rinaldi*, 434 U.S. at 29 n.15.

that the Rule gave federal district judges "the role of guarding against abuse of prosecutorial discretion." *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973). And even more recently, the Circuit has explained that "[a] court thus reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment.'" *Fokker Servs. B.V.*, 818 F.3d at 742 (quoting *Rinaldi*, 434 U.S. at 29 n.15).

Whether this understanding was ultimately correct at its inception, Rule 48(a) is now routinely applied in this District to consider dismissal with prejudice.

### b. The Harassment Test in the District of Columbia District Courts

Given that history, this Court must decide whether it will dismiss Mr. Madzarac's case with prejudice under the harassment test. Beyond general statements, the D.C. Circuit has not squarely addressed how to evaluate a motion to dismiss without prejudice when the defendant asks for dismissal with prejudice. *See Pitts*, 331 F.R.D. at 203. In the absence of such authority on how to make a that determination, this Court will take into account (1) the purpose of the government's dismissal, (2) the presence or absence of good faith, and (3) the objective effect that dismissal without prejudice would have on the defendant. Those three considerations can be found throughout the District's cases evaluating prosecutorial harassment under Rule 48(a). *See, e.g.*, *id.*; *United States v. Fields*, 475 F. Supp. 903 (D.D.C. 1979); *Poindexter*, 719 F. Supp. at 11; *United States v. Karake*, No. 02-cr-256 (ESH), 2007 WL 8045732 (D.D.C. Feb. 7, 2007); *Florian*, 765 F. Supp. 2d at 35. It is only when those considerations overcome the presumption that the public interest favors a dismissal without prejudice, that a dismissal shall be ordered with prejudice.

One of the foundational cases in this District, *Fields*, touched on all three of those issues. There, the district court dismissed an indictment with prejudice after concluding that the government "indicted [the defendant] without sufficient evidence against him Solely [*sic*] to secure

his cooperation with the government in testifying against another." *Fields*, 475 F. Supp. at 907. The court determined that, because the government did not have sufficient evidence to ever bring the defendant to trial, the government's pursuit of an indictment against him was wrongful and the circumstances indicated a lack of good faith. *Id.* at 905. And the effect on the defendant further counseled dismissal with prejudice. Otherwise, dismissal would lead to a "more favorable prosecutorial posture" after the defendant was "punished for not cooperating with the prosecution in the first place." *Id.* at 907 (internal quotation marks omitted).

In another case, the government wished to dismiss without prejudice a criminal prosecution because the trial date was approaching and the government had not been able to generate DNA test results for a crucial piece of evidence. *Pitts*, 331 F.R.D. at 202. The district court decided to dismiss with prejudice given that the government's reason for dismissal was merely "dissatisf[action] with the state of its case, through no fault of the defendant." *Id.* at 204; *id.* at 205 ("[T]he purpose sought to be achieved is clearly tactical, to better position the government to try this case."). Furthermore, "unusual, and indeed disturbing, facts surrounding [the defendant's] arrests" suggested an absence of good faith on the part of the government, including that he had been arrested and detained twice on the same criminal conduct. *See id.* at 205. As to the effect on the defendant, the district court determined that it would "amount to objective harassment to leave the threat of arrest and prosecution--for a third time--looming simply because the government seeks to cure its self-inflicted defects in this case." *Id.* at 206.

To the contrary, when the government faces an unexpected legal or factual development and moves to dismiss without prejudice, courts routinely grant the request. *See, e.g.*, *Karake*, 2007 WL 8045732 at *1–3. In *Karake*, after the district court suppressed critical statements for the prosecution's case, the prosecution moved to dismiss the case without prejudice, concluding that

the government could not meet its burden to prove its case beyond a reasonable doubt with the remaining evidence. *See id.* The court concluded that dismissing the case without prejudice—to allow for the possible future development of evidence—was perfectly legitimate. *Id.* Furthermore, there was no suggestion that the government's conduct lacked good faith. *See id.* Thus, even though dismissal without prejudice put the government on better footing than if it had to bring the case to trial, the court dismissed without prejudice. *Id.*

It is apparent then that courts in this District contemplate how the three considerations—purpose of the dismissal, presence or absence of good faith by the government, and effect on the defendant—relate to each other when determining prosecutorial harassment.

The appropriateness of considering these three factors in tandem is rather intuitive. To understand whether a defendant is being harassed, a court must consider not only how the defendant is affected, but why the defendant is affected. For example, suppose the key witness in a prosecution flees the country and becomes unavailable two years following indictment. If the government responds by moving to dismiss the case without prejudice, a court must consider not just how dismissal without prejudice would affect the defendant, but also why the government so moved. In that situation, barring significant evidence of a lack of good faith, the typical Rule 48(a) analysis would result in dismissal without prejudice. While it is true that the defendant would be disadvantaged by the dismissal, the government's purpose would be a valid reaction to developing circumstances. On the other hand, if the government knew from the beginning of the case that the witness would be unavailable, pursued the case for years anyway, and then tried to dismiss without prejudice to preserve the possibility of recovering the witness in the future, the typical analysis might very well lead to a dismissal with prejudice. In that way, the relationship between the

government's behavior and the effect on the defendant is the principal mode of analysis under the harassment test.

### c. Application of the Harassment Test

Here, the government's purpose and the effect on the defendant together counsel in favor of dismissal with prejudice. The government chose to pursue this case even while knowing that it could not establish venue in this District. Then, when the government was unable to work out a resolution where the defendant would waive venue, it moved to dismiss without prejudice to save itself from the tactical disadvantage of litigating a losing position. Even though there is no suggestion of anything but good faith on the part of the government and its attorneys, these actions warrant dismissal with prejudice under Rule 48(a).

Beginning with examination of the purpose of dismissal. During the preliminary hearing in this matter, on September 1, 2020, defense counsel explained that venue could never be established in the District of Columbia for the crimes charged. Tr. (Sep. 1, 2020) at 45. The government affirmatively represented that it could establish venue. *Id.* at 46 ("[T]he complaint is sufficient on that, and to allege the offense occurred within the District."). After the government indicted Mr. Madzarac, the case moved along slowly. For one, several issues regarding Mr. Madzarac's mental health and competence delayed matters at the outset. Then, about a year and a half into the case, his primary counsel throughout the vast majority of the proceedings withdrew. Minute Entry (Jan. 6, 2022); Notice of Appearance, ECF No. 52. After the Court set a trial date, Mr. Madzarac's new counsel brought the venue issue to the attention of the government again not once, but twice. Sealed Declaration of Benjamin Singer ¶¶ 3, 4. Thus, by August 2022, two different defense counsel had raised the issue of venue with the government and had done so a total of three times. Yet, it was only in March 2023 that the government was willing to admit this

District is the "wrong venue to adjudicate the offenses" and that a dismissal without prejudice is necessary to maintain the "ability to bring the case in another jurisdiction where venue lies." Gov.'s Mot. Dismiss 1, 6; *see* Gov.'s Reply 1.

That is very different from a situation where the government asks to dismiss based on developing circumstances or legal theories.   Indeed, there are few situations more obviously involving the forbidden governmental purpose of "escap[ing] from a position of less advantage in which [the government] found itself as a result of its own election" than the one presented here. *See Poindexter*, 719 F. Supp. at 11.

The government's written briefing fails to dispel the overwhelming impression that it was aware that venue could not be established but kept pushing forward with the prosecution regardless.  It unequivocally states now that "[t]hough the threat had an impact in this district . . . the government concedes that this impact is insufficient to establish venue" and "venue does not lie in the District of Columbia."  Gov.'s Mot. Dismiss 2–3.  The government argued the opposite during the preliminary hearing, a contention it now concedes was clearly foreclosed by D.C. Circuit caselaw.  *See* Gov.'s Reply 2 ("The government's argument was, essentially, an argument for an 'effects' test. An argument for an effects test was not frivolous and has been adopted by other courts in certain cases in other circuits, but that standard is not the current law of this circuit.").  Nevertheless, perhaps to take the sting out of its concession, the government goes on, only in its reply, to ask questions about alternative theories of venue.  "Was the defendant's conduct a 'continuing offense' under 18 U.S.C. § 3237(a) making the District of Columbia a proper venue?"  *Id.*  "Further, does 18 U.S.C. § 3238 provide venue in the District of Columbia?"  *Id.*  These short questions and brief analysis do next to nothing for the government's case.  The government maintained that venue was proper under a theory barred by binding caselaw and did

not even hint at these alternative theories at any point before its reply to Mr. Madzarac's motion to dismiss with prejudice.  Especially given the government's near-immediate concession upon the defendant moving to dismiss, the Court is convinced that the government pursued the case knowing it could not establish venue.[2]

As to why it would pursue a case without valid venue, the government's briefing sheds some light.  It notes that, while defense counsel was reraising venue arguments in August 2022, the government was discussing how to resolve this case short of trial.  Gov.'s Reply 3.  After all, "venue is waivable" and therefore negotiations could have resulted in a deferred prosecution agreement or other resolution wherein the defendant would waive any challenge to venue.  *Id.* at 3–4.  The government appears to believe that the availability of waiver helps its argument for a dismissal without prejudice.  It does not.  By the time of these negotiations, the government had been noticed three times of the lack of venue.   Furthermore, the prosecution's immediate concession upon a motion to dismiss, and the lack of any substantive argument otherwise, strongly suggests that it did not seriously intend to maintain venue in the District of Columbia.  To negotiate a resolution while the defendant was indicted in this District, knowing that the case would not be taken to trial, is precisely the improper purpose barred by the harassment test.

For the effect on the defendant, the operative question is whether dismissal without prejudice would lead to the government "commencing another prosecution at a different time or place deemed more favorable to the prosecution."  *Ammidown*, 497 F.2d at 620; *accord Poindexter*, 719 F. Supp. at 11 (identifying the concern as protecting the defendant from the government seeking to "gain a position of advantage, or to escape from a position of less advantage

---

[2] To conclude otherwise would be to believe that the government planned to pursue (1) an otherwise barred effects test theory of venue all the way to the *en banc* D.C. Circuit or (2) those alternative theories first mentioned in its reply.

in which it found itself as a result of its own election"). That effect is undoubtably present here. If the government were to have taken this case to trial, it would have had to prove to the jury that venue was appropriate for each charge against Mr. Madzarac. *See* 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Crim. § 307 (4th ed. 2022). By allowing the government to reindict in another district, the Court would be permitting the same kind of escape from a voluntarily chosen disadvantage at trial that courts have barred in the past. *See, e.g.*, *Pitts*, 331 F.R.D. at 205.

Nevertheless, while the government's purpose was improper under Rule 48(a)'s harassment inquiry, and the effect on the defendant counsels a dismissal with prejudice, this Court is firmly convinced that the government did not pursue this case with anything other than good faith. Its actions here are far afield from those cases where an absence of good faith suggested dismissal with prejudice would be appropriate. In *Fields*, the government indicted a substantively impossible case because it wished to coerce the defendant into cooperation. 475 F. Supp. at 905. In *Pitts*, the defendant was arrested twice for the same criminal conduct under suspicious circumstances. 331 F.R.D. at 202. Here, the government responded to developing and threatening circumstances when Mr. Madzarac allegedly terrorized embassy staff, it staked out a position on venue, and at a certain point maintained that position despite an unwillingness to see it through to the end. That establishes a purpose and effect suggesting a dismissal with prejudice would be appropriate under Rule 48(a)'s procedural scheme. But it fails to represent anything like bad faith.[3]

---

[3] And that is true under the various ways of considering prosecutorial bad faith. As this Court has explained, it is certainly true under the good faith component of the harassment test. It is also true under the analysis applicable to prosecutorial vindictiveness. *See United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017). And the evidence demonstrates that the prosecutors never stepped outside of their proper role in a manner that would pierce absolute immunity from suit. *See Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 686 (D.C. Cir. 2009). Under all three measures, the actions here suggest nothing like bad faith.

That puts this case in a strange position among Rule 48(a) cases. While the purpose and effect factors favor dismissal with prejudice, the presence of good faith suggests dismissal without prejudice would be proper. And the Court must, on one hand, recognize that the offense Mr. Madzarac has been charged with is serious. On the other hand, having had the time to fully investigate and consider the offense, the government offered him a deferred prosecution agreement without any incarceration. That latter point cuts against the presumption that the public interest would be served by a dismissal without prejudice.

Balancing all of the competing issues, this Court is ultimately, and narrowly, convinced to dismiss the indictment with prejudice despite the presence of good faith. In sum, because the purpose and effect of a dismissal without prejudice is so squarely within the core of the objective harassment test under Rule 48(a)—alongside the government's conclusion that Mr. Madzarac's case merits a deferred prosecution agreement without incarceration—this Court concludes the public interest would be best served by a dismissal with prejudice.

*      *      *

Taking the developments of the last two and a half years as a whole, the Court is under the overwhelming impression that the government, for its own reasons, pursued a case it knew could not successfully be brought to trial in the District of Columbia. And while it is true that the many delays over the last two and a half years are almost exclusively to be laid at the feet of the defense and the defendant, this does not absolve the government of its knowledge that venue was inappropriate throughout that time. It is not, after all, the overall delay that leads to this dismissal with prejudice. Rather, it is the government's knowing and voluntary choice to continue pursuing the case knowing full well that it would never try the case in this District. At a certain point, the

purpose and effect of that choice crossed over the threshold to harassment and, in this novel and extraordinary situation, dismissal with prejudice is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DISMISS** the indictment **WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a).

Furthermore, even though this opinion cites to and quotes sealed material, this opinion shall not be filed under seal in any part.  Because the Court relies on the referenced material to conclude that Mr. Madzarac's indictment should be dismissed with prejudice, the public's right to access outweighs the otherwise valid case for sealing that information.  Accordingly, the referenced documents will remain under seal, but this opinion shall remain available to the public.

A separate order will issue.

Date: May ____, 2023

Royce C. Lamberth
United States District Judge